opinion of the court
Arthur E. Blyn, J.
Petitioners seek a judgment pursuant to CPLR 7511 vacating and setting aside the award of arbitrators in a matter between the petitioners and the respondent, upon the grounds that the arbitrators exceeded their powers and so imperfectly executed them that a final and definite award upon the subject matter submitted was not made, that there was misconduct in the manner in which the arbitration was conducted thereby preventing petitioners from receiving a fair hearing.
The arbitration arose out of an accident which took place on January 24,1976, involving a U-Haul truck insured by Ponderosa Insurance Company (Ponderosa), a vehicle whose owner was insured by Long Island Insurance Com *1022 pany (Long Island) and whose operator was insured by State Farm Insurance Co. (State Farm).
State Farm’s position was and is that it is the excess carrier and there does not seem to be any dispute as to this.
Petitioner states: personal injury protection (PIP) benefits were paid by Republic Claims Service Company (Republic) as agent for Ponderosa Insurance Company in the sum of $50,000 to George Green (Green) under the New York no-fault law. These payments were made in the form of three checks, the date of the last check being August 2, 1977.
By arbitration notice dated June 29, 1977 Ponderosa, through its agent Republic, sought reimbursement from Long Island of the PIP benefits it paid to Green pursuant to section 674 of the Insurance Law.
The arbitration award, dated November 7,1977, granted an award of $50,000 (PIP benefits) to petitioner. The New York Arbitration Committee of the Committee on Insurance Arbitration (Committee), sua sponte, by letter dated November 15, 1977 in effect recalled the original award calling it “void” on the ground that the original arbitration had taken place because of a clerical error in that there should not have been a hearing until disposition of the bodily injury suits then pending. It stated that a new hearing date would be set one year later or if the bodily injury suits were settled to an earlier calendar.
This action of the Committee was protested by Republic in a letter dated November 15, 1977 pointing out that no formal request had been made by any party for such disposition and that only by phoning the Committee did it learn that an attorney, apparently representing the respondent, had told the writer of the letter of November 7, 1977 that there was pending litigation and that this information had not been passed on to the panel.
Despite this protest the Committee set a new hearing date which was then deferred because now Long Island requested an adjournment because of the pending litigation.
The hearing continued to be deferred at the request of Long Island on the basis of the still pending litigation. *1023 Thereafter the Committee by letter dated September 19, 1979 informed petitioner that it was closing its file because Long Island was ordered into liquidation — this notice was not given to petitioner until the beginning of November, 1979.
Petitioner points out that this notification by the Committee was not given until after three years had elapsed since the date of the accident and that State Farm, as the excess insurer, could not be brought into the case until its liability which was conditioned upon the unavailability or inadequacy of the primary coverage of Long Island within that three-year period.
Petitioner further pointed out in this connection that the order of liquidation of Long Island was dated May 31,1979 also more than three years after the date of the award.
Thereafter petitioner filed an “Amended Application” with the Committee, using the original docket number of the matter and that it was requested therein that State Farm be substituted as respondent.
The Committee, according to petitioner, apparently ignored its request and assigned a new docket number to the amended proceeding against State Farm. State Farm, answering the amended arbitration notice, alleged that it had not received any prior notice of the claim and that petitioner had failed to file any arbitration papers within the period of the Statute of Limitations. Petitioner deals with this answer of State Farm by chronicling the notices to State Farm of the claim from March 15,1976 (less than two months after the accident) to January of 1977.
The arbitrators agreed with the position of State Farm based on the Superintendent of Insurance Rules and Regulations (11 NYCRR 65.10 [d] [5]) which they interpreted to mean that the arbitration had to be commenced within three years of the date of the accident.
Petitioner contends that 11 NYCRR 65.10 does not apply because the accident occurred prior to December 1, 1977 the effective date of that section and that the rules and regulations in effect for the period prior to December 1, 1977 do not contain any Statute of Limitations but a test of *1024 reasonableness as to the timeliness of the commencement of arbitration.
The petitioner further argues that even if a three-year statute were to be applied — it did not begin to run as to the matter in arbitration until it accrued which would not occur until the PIP benefits were paid to Green and that the earliest payment to him was by check dated March 21, 1977 and the latest August 2,1977 and that in either event the amended arbitration proceeding was timely commenced.
Petitioner further argues that section 674 of the Insurance Law refers to a right to recover by one insurer against another and that it is statutory in nature and the statute creating that right does not contain any Statute of Limitations.
Petitioner also contends that State Farm’s obligation arises under contract and that therefore the six-year statute applies.
Finally the petitioner contends that there was misconduct by the Committee in the manner of the selection of the arbitrators who sat on the case; that there was a conflict of interest between the arbitrators and the State Farm representatives. Petitioner claims that an individual who acted as an arbitrator in one case was an advocate in another case. That all of the arbitrators were drawn from a common pool of insurance company representatives who also acted as arbitrators for their employers and that this created a “club-house” atmosphere which allegedly made it impossible to secure a fair hearing.
Respondent in its opposing papers deals with petitioner’s complaint as to the manner of selecting arbitrators by stating that petitioner is a member of the Committee and that it voluntarily agreed to submit the controversy to arbitration by the Committee and had notice as to the composition of the panel of arbitrators and made no objections.
It then makes the laconic statement that although it is the excess insurer its coverage is not automatically triggered by the order of liquidation of Long Island. It claims that Long Island is not going out of business and is not *1025 bankrupt — and that if indeed it could not pay its debts then State Farm’s excess policy would be activated.
Petitioner, in its reply affirmation, denies that it is a member of the Committee, states that it was never notified as to the composition of the panel and thus had no opportunity to object and further that it did not voluntarily submit the controversy to the Committee. It points out that section 674 of the Insurance Law mandates arbitration of no-fault controversies.
The court agrees with petitioner’s statement that the standard for review of compulsory arbitration differs from that applied to voluntary arbitration. The Court of Appeals in Mount St. Mary’s Hosp. of Niagara Falls v Catherwood (26 NY2d 493), stated this principle although dealing with the compulsory arbitration mandated under section 716 of the Labor Law. The basic principle enunciated by that court is totally applicable to the compulsory arbitration as mandated by section 674 of the Insurance Law. The Court of Appeals in St. Mary’s (supra) states that CPLR 7511 (subd [b]) authorizes review as to whether the arbitrator exceeded his power by logical extension includes review in the case of compulsory arbitration (but that only in such case) of whether the award is supported by evidence or other basis in reason, as may be appropriate, and appearing in the record.
That court goes on to state that when in effect the arbitration is as a result of an exercise of legislative power the award may not be arbitrary or capricious and that further the indirect exercise of the police power by the arbitrators must be justified by the public interest and reasonable conditions to effectuate that interest.
Everything said by that court is applicable to section 674 of the Insurance Law.
The court thus concludes that it has the power to review the award by the arbitrators in this proceeding.
The court concludes that the finding of untimeliness by the arbitrators was arbitrary, capricious and flies in the face of the public interest as reflected in the enactment of section 674 of the Insurance Law.
*1026 The court believes that:
(1) A Statute of Limitations, if any, applicable was tolled by the acts of the Committee in deferring the hearing;
(2) that any three-year statute, if applicable, did not commence to run until PIP benefits were paid;
(3) that the controversy, subject of the arbitration, was one which arose out of the contract and that the six-year Statute of Limitations is applicable;
(4) that it would be unconscionable in the circumstances set forth, and not controverted by respondent, to bar petitioner’s claim.
The court does not have to reach the issue as to whether the structuring of the panel of arbitrators constituted misconduct.
The court grants the petition and directs that a judgment be settled providing for the scheduling of a new hearing.